IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 20-cv-3548-PAB-SKC

ZACKARIAH JONES,

      Plaintiff,

v.

WARDEN MATT HANSEN, in his individual capacity, *et al.*,

      Defendants.

---

## ORDER

---

    This matter is before Court on CDOC Defendants' Amended Partial Motion to Dismiss [Docket No. 28] filed by the Colorado Department of Corrections defendants ("CDOC Defendants" or "defendants").[1]  Plaintiff responded, Docket No. 48, and defendants' replied.  Docket No. 50.

## I.  BACKGROUND[2]

    This dispute arises out of events that occurred while plaintiff was incarcerated at Sterling Correctional Facility ("SCF"), a facility within the Colorado Department of Corrections ("CDOC").  Docket No. 1 at 3–4, 17, ¶¶ 1, 10–11, 82.

    Plaintiff has named 66 defendants.  *See generally id.*  They are Matt Hansen and

---

[1] Defendants Stephen Gerriol, Warden Matt Hansen, Robert Fernandez, Kenneth Owensby, Joshua Jewell, Karrie Mitchell, Garry Reed, William Martin, and Brittany Dowis are not parties to this motion.  *Id.* at 3 n.2.

[2] The following allegations, which the Court assumes to be true, are taken from plaintiff's Complaint and Jury Demand [Docket No. 1].  *See Brown v. Montoya*, 662 F.3d 1152, 1162 (10th Cir. 2011).

Jeff Long, Warden and Assistant Warden of SCF, respectively, *id.* at 5, ¶¶ 13–14; Captain Tol Scott, *id.*, ¶ 15; Lieutenants Francisco Andriello, Frank, Quinlin, Glissman, Fernandez, Jackson, *id.* at 5–6, ¶¶ 16–21; Sergeants Stephanie Taylor, Crowder, Aaron Overturf, Charles Neece, *id.* at 6–7, ¶¶ 22–25; Correctional Officers Martin, William Lomax, Tina Simon, Thamer Almerbed, Thomas Lambert, Timothy Holcombe, Raquel Vasquez, Russell Shino, Robert Thompson, Rebecca Marshak, Robert Thelen, Ryan Suppes, O'Ryan Taylor, Miguelle Rivasplata, Michael Tait, Owensby, Jessica Cordova, Johanna Kennedy, Carrie Meis, Jacob Bierend, Joshua Stankiewicz, Justin Reedy, David Hass, Colte Drury, Bonnie Axtell, Ashley Franson, Angela Kurtenbach, Aaron Kennedy, Aaron Courtright, Micheal Flint, Sherrie Cooley, Courtney Acinelli, Darryl Aguilar, Rae Wooldridge, Taylor Spence, Jane Dupps, Isaac Graff, Joshua Jewell, Andrew Van Fleet, Flores, Ruiz, Clarkson, Dailey, Sowa, and Nathaniel Forward, *id.* at 7–15, ¶¶ 26–70; and Nurses Karen Ray, Mitchell, Dillinge,[3] Gerriol, Annis, Clotman, Reed, and Dowis (collectively, the "Nurse Defendants").  *Id.* at 16–17, ¶¶ 72–79. Plaintiff refers to defendants Overturf, Neece, Martin, Lomax, Simon, Almerbed, Lambert, Holcombe, Vasquez, Shino, Thompson, Marshak, Thelen, Suppes, Stephanie Taylor, O'Ryan Taylor, Rivasplata, Tait, Owensby, Cordova, Aaron Kennedy, Johanna Kennedy, Meis, Bierend, Stankiewicz, Reedy, Drury, Axtell, Franson, Kurtenbach, Courtright, Flint, Cooley, Acinelli, Hass, Aguilar, Wooldridge, Spence, Dupps, Graff, Jewell, Van Fleet, Clarkson, Sowa, and Foward as the "Dry Cell Watch Defendants."  *Id.*

---

[3] It is not clear whether this defendant's surname is "Dillinge" as plaintiff provides in the caption and complaint, *see id.* at 1; *id.* at 16–17, ¶¶ 74, 80, or "Dillinger," as defendants refer to her.  Docket No. 28 at 3.

at 15–16, ¶ 71.[4]

On December 1, 2018, plaintiff was suddenly surrounded by six correctional officers, ordered out of his cell, strip-searched twice, and placed in universal restraints, which included wrist restraints secured to a "belly chain" and leg restraints. *Id.* at 3, 17–18 ¶¶ 1, 82–85. Plaintiff was unable to move his hands more than a few inches. *Id.* at 18, ¶ 86. He was then taken to a "dry cell," which is a cell with "no independent access to a sink or toilet," where he remained for twelve days. *Id.* at 3, 18, ¶¶ 1–2, 84, 90. Initially, plaintiff was not told why he was being taken to the dry cell. *Id.* at 18, ¶ 87. Officers instead responded to plaintiff's requests for information with statements like, "you're f*****." *Id.* Later, plaintiff learned that CDOC staff mistakenly suspected that he had swallowed contraband. *Id.*, ¶¶ 88–89. An hour after he was placed in universal restraints, plaintiff provided a urine sample, which did not reveal any illegal or forbidden substances. *Id.* at 19, ¶ 95.

On December 2, plaintiff was told that he would be taken for an x-ray and that, if nothing appeared on the x-ray, he would be released. *Id.*, ¶ 96. Plaintiff agreed, but after he overheard officers saying that he would be in the dry cell "for a while," regardless of what the x-ray revealed, plaintiff refused to continue. *Id.*, 19–20, ¶¶ 96–99. Plaintiff was then told that he would have to produce three bowel movements, which would be searched for contraband, before he would be released. *Id.* at 20, ¶ 100. After three bowel movements, plaintiff expected to be released, but he was instead told

---

[4] CDOC Defendants have provided first names for some defendants and minor corrections to certain defendants' names. *See, e.g.*, Docket No. 28 at 3 n.1 (indicating that Correctional Officer F/N/U Van Fleet is actually named Andrew Vanvleet). Although plaintiff does not contest any of these corrections, defendants cannot amend plaintiff's complaint.

that he would be in the dry cell "for a while."  *Id.*, ¶ 101.  Warden Hansen told plaintiff

that he "knew" plaintiff had contraband and would be in the dry cell until plaintiff

produced it, or as long as Warden Hansen wanted him to be there.  *Id.* at 20–21,

¶¶ 104, 107.  According to plaintiff, Warden Hansen told him that "the only way" he

would be released "was if [plaintiff] defecated enough to fill a red Solo cup."  *Id.* at 21,

¶ 106.  He also told plaintiff that CDOC policy permitted him to keep plaintiff in universal

restraints in the dry cell as long as he wanted because "the policy required that an

inmate suspected of ingesting contraband produce 'a substantial amount' or 'normal

amount' of feces for officers to search, and it was under [Warden] Hansen's discretion

to determine what constituted a 'substantial amount.'"  *Id.* at 21, ¶ 108.  Warden Hansen

allegedly told plaintiff that he had previously kept inmates in dry cells and in universal

restraints for "twenty to thirty days."  *Id.*, ¶ 109.

Defendants Owensby, Aguilar, Dupps, Thompson, Jewell, and Holcombe

recorded nine separate bowel movements during his twelve days in the dry cell, yet

Assistant Warden Long "refused to recognize the first six of these bowel movements as

'substantial.'"  *Id.* at 22, ¶ 112.  Even after plaintiff produced a "third bowel movement

that was . . . accepted as substantial" by Warden Hansen and Assistant Warden Long,

plaintiff had to remain in the dry cell in universal restraints for eleven more hours.  *Id.*,

¶ 113.

While in the dry cell, plaintiff was not allowed to shower,[5] clean himself after

defecating, change his clothing, spend significant time unrestrained, lie down during the

---

[5] On December 8, defendant Cordova told plaintiff that he could shower after he
produced a bowel movement.  *Id.* at 22, ¶ 117.  Even though plaintiff did the following
day, he was still not allowed to shower.  *Id.*

day, sleep without glaring lights, or drink sufficient water.  *Id.* at 3, 22, ¶¶ 2, 115–16.

The restraints were "essentially" never removed; however, the restraints were removed

when CDOC staff changed the gauze that was placed under plaintiff's handcuffs and

when plaintiff was strip searched.  *Id.* at 18–19, ¶ 91.  Plaintiff's jumpsuit was never

changed.  *Id.* at 19, ¶ 92.

Plaintiff alleges that, because of the restraints, he was not able to "properly clean

himself after defecating," which caused "feces dried on [his] anus . . . to be ripped off at

the time of the subsequent defecation," leading to plaintiff "bleed[ing] and suffer[ing]

intense pain in the area of his anus," as well as "long-lasting abrasions."  *Id.* at 3, 23

¶¶ 3, 120–21.  The Dry Cell Watch Defendants refused to loosen the restraints

connecting plaintiff's wrists to his belly chain, which left plaintiff "unable to properly wipe

and clean himself after defecating," and did not allow plaintiff to wash his hands after

defecating.  *Id.* at 23, ¶ 118–19, 123.  Plaintiff alleges that, after two or three days of not

being able to clean himself, he began to "smell profoundly of feces," which could be

smelled from down the hall.  *Id.*, ¶ 122.  Because he could not wash his hands, "feces

remained on [plaintiff's] buttocks and hands," which inadvertently spread to his jumpsuit

and cell walls.  *Id.*, ¶ 124.  The Dry Cell Defendants referred to plaintiff as the "shitty

guy."  *Id.* at 24, ¶ 126.

The Dry Cell Watch Defendants, who watched plaintiff in shifts, *see id.* at 19,

¶ 93, personally observed plaintiff's "declining hygiene; forced [plaintiff] to remain in an

upright, seated position for hours on end," and "ignored [plaintiff's] repeated requests for

additional water," "to be allowed to properly clean himself after defecating," "to be

allowed to shower," and "to be allowed to change his clothing."  *Id.*, ¶ 94.  Plaintiff

alleges that defendants Graff, O'Ryan Taylor, Aguilar, Reedy, Hass, Suppes, Stephanie Taylor, Dailey, Rivasplata, Neece, Flores, Dupps, Bierend, Almerbed, Holcombe, Owensby, Jewell, Van Fleet, Thompson, Acinelli, and Thelen "participated in or observed" the twice-a-day strip searches of plaintiff and were therefore "especially aware of his rapidly worsening hygiene and odor, as well as the deteriorating condition of his anus and surrounding areas." *Id.* at 24, ¶ 128.  The Dry Cell Watch Defendants also observed blood on plaintiff's used toilet paper, *id.* at 25, ¶ 134, and plaintiff "repeatedly advised" the Dry Cell Watch Defendants of these issues.  *Id.*

Plaintiff's ankles grew "raw and bruised from the restraints' constant" chafing, and his wrists had to be wrapped in gauze.  *Id.* at 24, ¶ 129.  Plaintiff was not permitted to lie down in his bunk; instead, the Dry Cell Watch Defendants forced plaintiff to sit upright 16 hours per day and, when he became tired, they intervened to force him upright.  *Id.* at 25, ¶ 131.  This was painful and caused further rectal bleeding.  *Id.*, ¶ 132.  The restraints also dug into plaintiff's hips and abdomen and prevented plaintiff from sleeping.  *Id.*, ¶ 133.  Defendants Reedy, Suppes, Drury, O'Ryan Taylor, Stephanie Taylor, Tait, Bierend, Graff, Kurtenbach, Dailey, Rivasplata, Flint, Axtell, Dupps, Owensby, Sowa, Cooley, Hass, Wooldridge, Van Fleet, Thompson, Overturf, Meis, Ruiz, Shino, Aguilar, and Marshak performed or observed checks or adjustments of plaintiff's restraints and therefore were aware of the "worsening condition" of plaintiff's "raw, bruised ankles and wrists."  *Id.*, ¶ 135.

The Nurse Defendants each saw plaintiff while he was in the dry cell and therefore knew of plaintiff's injuries and pain from the restraints and inability to wash himself and change his clothing, and plaintiff complained to each of them "that his

rectum was bleeding and he was in serious pain and discomfort." *Id.* at 26, ¶¶ 137–38.

Additionally, plaintiff's cell was unheated for much of the time, which was in December, and a vent was opened directly to the outside. *Id.*, ¶ 139. He experienced "multiple nights" when his cell temperature dropped to the mid-50s, *id.*, ¶ 140, which he confirmed on a thermometer that he was briefly allowed to have in his cell, frost formed on his cell walls, *see id.* at 27, ¶ 143, and he rarely had blankets or bedding for warmth. *Id.* at 26, ¶ 140. Plaintiff complained about this over the first several days to defendants Jackson, Andriello, Fernandez, Simon, Reedy, and Hass. *Id.*, ¶ 141. He discussed the condition with defendants Warden Hansen, Long, Scott, Andriello, Frank, Quinlin, Glissman, Fernandez, Stephanie Taylor, Crowder, Overturf, Neece, and Dailey (collectively the "Supervisory Defendants"). *Id.* at 27, ¶ 145. Plaintiff was released after twelve days, at 10:00 a.m. on December 12. *Id.* at 18, ¶ 90.

Plaintiff brings two Eighth Amendment cruel and unusual punishment claims under 42 U.S.C. § 1983, one for the use of excessive force, *id.* at 29–31, ¶¶ 155–72, and one for the conditions of his confinement. *Id.* at 31–33, ¶¶ 173–90. The CDOC Defendants seek to dismiss plaintiff's complaint against them for failure to allege their personal participation in the allegedly unconstitutional conduct and because defendants are entitled to qualified immunity. *See* Docket No. 28.

## II.  LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must allege enough factual matter that, taken as true, makes the plaintiff's "claim to relief . . . plausible on its face." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007)).  "The 'plausibility' standard requires that relief must plausibly follow from the facts alleged, not that the facts themselves be plausible." *RE/MAX, LLC v. Quicken Loans Inc.*, 295 F. Supp. 3d 1163, 1168 (D. Colo. 2018) (citing *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008)).  Generally, "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Twombly*, 550 U.S. at 555) (alterations omitted).  However, a plaintiff still must provide "supporting factual averments" with her allegations.  *Cory v. Allstate Ins.*, 583 F.3d 1240, 1244 (10th Cir. 2009) ("[C]onclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based." (citation omitted)).  Otherwise, the court need not accept conclusory allegations.  *Moffet v. Halliburton Energy Servs., Inc.*, 291 F.3d 1227, 1232 (10th Cir. 2002).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quotations and alterations omitted); *see also Khalik*, 671 F.3d at 1190 ("A plaintiff must nudge [his] claims across the line from conceivable to plausible in order to survive a motion to dismiss." (quoting *Twombly*, 550 U.S. at 570)).  If a complaint's allegations are "so general that they encompass a wide swath of conduct, much of it innocent," then plaintiff has not stated a plausible claim.  *Khalik*, 671 F.3d at 1191 (quotations omitted).  Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Bryson*, 534 F.3d at 1286 (alterations

omitted).

## III.  ANALYSIS

The CDOC Defendants argue that both of plaintiff's claims should be dismissed because plaintiff has "failed to allege that these defendants personally participated in the alleged[ly] unconstitutional conduct."  Docket No. 28 at 4.[6]  They argue that plaintiff has not plausibly alleged either claim because he has not established that each defendant was personally involved in the alleged constitutional violation, but instead simply "lumps together" allegations about multiple individuals.  *Id.* at 7–8.

The CDOC Defendants make no arguments about whether plaintiff has plausibly alleged the substantive elements of an excessive force or condition of confinement claim.  *See generally* Docket No. 28.  Their argument is limited to whether plaintiff has plausibly established each CDOC Defendant's personal participation in the alleged constitutional violations.  *Id.*

"Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation."  *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) (quoting *Foote v. Spiegel,* 118 F.3d 1416, 1423 (10th Cir. 1997)).  "Personal involvement is not limited solely to situations where a defendant violates a plaintiff's rights by physically placing hands on him."  *Fogarty v. Gallegos*, 523 F.3d 1147, 1162

---

[6] Plaintiff argues that it is unclear whether the CDOC Defendants seek to dismiss only plaintiff's excessive force claim or conditions of confinement claim, or both claims.  Docket No. 48 at 5–6.  Because it is unclear which claims CDOC Defendants are targeting and because there is an "extra burden" on plaintiff to respond to arguments about both claims, plaintiff insists that the Court "must construe" the motion as only seeking to dismiss the conditions of confinement claim.  *Id.*  Plaintiff is mistaken.  The CDOC Defendants' motion seeks to dismiss "[p]laintiff's [c]omplaint."  Docket No. 28 at 4.  They are therefore attacking both claims.

(10th Cir. 2008).  The Tenth Circuit has "recognized at least two other ways in which a plaintiff may show a defendant's involvement."  *Id.*  First, "[a]n officer who fails to intervene to prevent a fellow officer's excessive use of force may be liable under § 1983."  *Id.*  "In addition, supervisors may be liable for a subordinate's constitutional deprivations under certain circumstances."  *Id.*

As noted previously, plaintiff has grouped most defendants based on their alleged roles in his confinement: Supervisory Defendants, Dry Cell Watch Defendants, and Nurse Defendants.  Additionally, for many defendants, plaintiff also provides individual allegations.  The CDOC Defendants' motion focuses on the sufficiency of plaintiff's allegations for each group.  *See* Docket No. 28 at 8–11.  There are three defendants who do not appear in any group: Jackson, Flores, and Ruiz.  The CDOC Defendants do not address these defendants.

### A.  Supervisory Defendants

Plaintiff alleges that he "discussed the poor conditions of his restraint in the dry cell" with the Supervisory Defendants, none of whom "took any action to abate the cruel and inhumane conditions."  Docket No. 1 at 27, ¶ 145.  Additionally, plaintiff alleges that the Supervisory Defendants all knew that plaintiff "faced an obvious and substantial risk of serious harm" from the "continuous wearing of restraints" and "inhumane conditions of confinement."  *Id.* at 27–28, ¶ 148.

Plaintiff makes individualized allegations about some of the Supervisory Defendants.  Plaintiff alleges that Assistant Warden Long arbitrarily refused to recognize plaintiff's first six bowel movements as "substantial" under CDOC policy.  *See id.* at 22, ¶ 112.  Plaintiff alleges that plaintiff "repeatedly" advised Assistant Warden Long and

Andriello of how cold his cell was, yet they took no action.  *Id.* at 26, ¶ 141.  He alleges

that Stephanie Taylor, Dailey, and Neese participated in or observed strip searches and

were aware of plaintiff's worsening hygiene, odor, cell condition, and the deteriorating

condition of plaintiff's anus and surrounding areas, yet did nothing.  *Id.* at 24, ¶ 128.  He

claims that Stephanie Taylor and fellow Supervisory Defendants Overturf and Dailey

were also aware of the effects of plaintiff's restraints, as they performed or observed

checks or adjustments of plaintiff's restraints and witnessed the worsening condition of

plaintiff's ankles and wrists.  *Id.* at 25, ¶ 135.

The CDOC Defendants argue that, because plaintiff fails to differentiate between

a Supervisory Defendant who may have seen plaintiff on the first day, when "few if any

of the conditions alleged in the [c]omplaint had occurred," and a Supervisory Defendant

who may have seen plaintiff on the twelfth, when conditions were worse, plaintiff has

failed to show the any of the Supervisory Defendants' personal participation in the

alleged constitutional violations.  Docket No. 28 at 8–9.  Additionally, the CDOC

Defendants argue that plaintiff has failed to show how any of the lower-level

Supervisory Defendants could have "countermanded" the alleged policy of holding

plaintiff in the dry cell.  *Id.* at 9.

As the Court has noted, to withstand a motion to dismiss, a plaintiff's "claim to

relief" must be plausible on its face.  *See Khalik*, 671 F.3d at 1190 (citation omitted).

But the plausibility standard does not require that the facts themselves be plausible,

only that "relief must plausibly follow from the facts alleged."  *RE/MAX, LLC*, 295 F.

Supp. 3d at 1168 (citing *Bryson*, 534 F.3d at 1286).  This is because the Court must

accept the plaintiff's allegations as true on a motion to dismiss.  *See Khalik*, 671 F.3d at

1190.  The plausibility standard is satisfied if the complaint gives the defendant "fair notice of what the claim is and the grounds upon which it rests." *Erickson*, 551 U.S. at 93 (citation omitted).  Thus, although it may not ultimately be true that the Supervisory Defendants who saw plaintiff early on in the twelve-day period would have witnessed the conditions that plaintiff complains of, that argument attacks the truth of plaintiff's allegations, not whether relief plausibly follows from those allegations.  Moreover, because the Court assumes that a plaintiff's allegations are true on a motion to dismiss, an argument that what plaintiff has alleged cannot be true – for instance that a particular defendant did not actually visit plaintiff late enough in the period to witness unconstitutional conditions – is misplaced.  Plaintiff has alleged that each of the Supervisory Defendants witnessed plaintiff's declining condition and the state of his cell and failed to remedy the situation.

Assuming the truth of those allegations, plaintiff has sufficiently connected the alleged constitutional violations to the Supervisory Defendants.  This satisfies the requirement that plaintiff allege each defendant's personal involvement in the alleged constitutional violation.  *See Gallagher*, 587 F.3d at 1069; *see also Mauchlin v. Davis*, No. 12-cv-01449-RM-BNB, 2014 WL 5069547, at *7 (D. Colo. Oct. 9, 2014) ("Because the prison environment is highly regulated and daily life is necessarily repetitive, *see Hudson v. Palmer*, 468 U.S. 517, 526–28 (1984), it is logical that [p]laintiff's confinement conditions allegation would be the same for each [d]efendant and each of the Seven Defendant's personal participation in the singular alleged constitutional violation, each Defendant's failure to remedy the confinement conditions, would be similar.");[7] *Wilson v.*

---

[7] In reply, the CDOC Defendants seek to distinguish *Mauchlin*, which plaintiff

*Wilcox*, No. 14-cv-0421-MSK, 2018 WL 1304532, at *9 (D. Colo. Mar. 13, 2018) ("Though Mr. Wilson has not alleged which specific [d]efendant committed which specific punch or testicle grab, it would be unfair to require him to do so based on circumstances in which he was, at a minimum, disoriented from tear gas and physical injuries. . . . Mr. Wilson has specifically alleged who the individuals were that entered his cell and subdued him, which can be read together with his general allegations that he was struck and injured."). The Court does not find that plaintiff's choice to group certain defendants into categories necessarily makes his claims any less plausible.

Defendants rely on *Robbins v. Oklahoma* for the proposition that plaintiff must "make clear exactly who is alleged to have done what to whom." Docket No. 28 at 8 (quoting 519 F.3d 1242, 1250 (10th Cir. 2008)). *Robbins* is distinguishable, however, because the plaintiffs' allegations in *Robbins* were far less specific and the plaintiffs "mistakenly" grouped together allegations that were "entirely different in character" against a number of unrelated defendants. *Robbins*, 519 F.3d at 1250 ("Defendants . . . instruct[ed] the [p]laintiffs to place [their child] in a specific [d]aycare"; "[d]efendants . . .

---

relies upon in his response. *See* Docket No. 50. They argue that *Mauchlin* involved a *pro se* plaintiff who brought claims against "several" defendants. *Id.* at 4–5. Although the CDOC Defendants are correct that the plaintiff in *Mauchlin* proceeded *pro se*, it is not clear that the court would have found the same allegations insufficient if the plaintiff in that case were represented. Moreover, it is not clear why the fact that *Mauchlin* involved fewer defendants than this case makes the plaintiff's allegations in *Mauchlin* more plausible than those in this case. The allegedly unconstitutional conduct may have persisted longer in this case, and more CDOC staff may have visited plaintiff in this case than in *Mauchlin*. Finally, defendants argue that the allegations in *Mauchlin* and this case are distinguishable. *Id.* at 5. Defendants argue that the plaintiff in *Mauchlin* "only generally alleged 'unsanitary and excessively noisy [sic]' conditions in his cell," while plaintiff here makes much more specific allegations. *Id.* (quoting *Mauchlin*, 2014 WL 5069547, at *6). However, plaintiff's more specific and targeted allegations in this case make his claims more plausible than the plaintiff's in *Mauchlin*.

13

assert[ed] control over such [d]aycare"; and "[d]efendants . . . failed to protect and supervise the child."). The allegations in *Robbins* were insufficient because there was "no distinction as to what acts [were] attributable to whom," which made it "impossible for any of the[] [defendants] to ascertain what particular unconstitutional acts they [were] alleged to have committed." *Id.* Here, however, unlike in *Robbins*, the Supervisory Defendants have notice of what acts are attributable to them – failure to address the deteriorating condition of plaintiff's wrists and ankles because of the restraints, plaintiff's pain and discomfort around his anus, and his soiled cell and jumpsuit.

The CDOC Defendants also argue that plaintiff has failed to plausibly allege that the Supervisory Defendants could have "countermanded" the alleged policy of holding plaintiff in the dry cell. Docket No. 28 at 9. This argument fails for two reasons. First, the CDOC Defendants misunderstand plaintiff's claim, which is not that one of the Supervisory Defendants could have or should have countermanded the policy, but that the twelve-day confinement, even after plaintiff produced three bowel movements, was contrary to official policy. Docket No. 48 at 10 n.2 (citing Docket No. 1 at 20–22, ¶¶ 101, 110–12). Plaintiff argues that the Supervisory Defendants could have properly enforced the policy without violating plaintiff's constitutional rights by acknowledging his bowel movements earlier, permitting him to shower, putting him in a warmer cell, letting him change his jumpsuit, loosening or removing his restraints, or letting him wash his hands after going to the bathroom.

Second, in equating the factual impossibility of their being able to countermand the policy with plaintiff's failure to state a claim, the CDOC Defendants misapply the plausibility standard, which does not require that the allegations themselves be

plausible, but only that the relief plausibly flow from the allegations, which the Court assumes to be true.  *See RE/MAX, LLC*, 295 F. Supp. 3d at 1168; *see also Vondrak v. City of Las Cruces*, 535 F.3d 1198, 1210 (10th Cir. 2008) (a defendant must have had "a realistic opportunity to intervene to prevent the harm from occurring," but the question of whether the defendant was "capable of preventing the harm from being caused by another officer is an issue of fact for the jury unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise").  The Court will therefore deny the CDOC Defendants' motion as to the Supervisory Defendants.

### B.  Dry Cell Watch Defendants

Plaintiff alleges that the Dry Cell Watch Defendants, among other things, took shifts watching plaintiff, personally observed plaintiff's "declining hygiene; forced [plaintiff] to remain in an upright, seated position for hours on end; ignored [plaintiff's] repeated requests for additional water; ignored [plaintiff's] repeated requests to be allowed to properly clean himself after defecating, ignored [plaintiff's] repeated requests to be allowed to shower; and ignored [plaintiff's] repeated requests to be allowed to change his clothing."  Docket No. 1 at 19, ¶¶ 93–94.  More specifically, plaintiff alleges that the Dry Cell Watch Defendants did not permit plaintiff to shower or change his jumpsuit, *id.* at 22, ¶¶ 115–16, often refused to loosen plaintiff's restraints, "leaving him unable to properly wipe and clean himself after defecating," or allow him to wash his hands properly after going to the bathroom.  *Id.* at 23, ¶¶ 118–19, 123.  During the day, the Dry Cell Watch Defendants did not permit plaintiff to lie down and instead forced him to sit upright for 16 hours each day, which caused further pain and rectal bleeding.  *Id.* at 25, ¶¶ 131–32.

Plaintiff also provides allegations about individual Dry Cell Watch Defendants. For instance, plaintiff alleges that defendants Graff, O'Ryan Taylor, Aguilar, Reedy, Hass, Suppes, Rivasplata, Dupps, Bierend, Almerbed, Holcombe, Van Fleet, Thompson, Acinelli, and Thelen participated in or observed strip searches of plaintiff, which occurred twice a day, and were therefore "especially aware of his rapidly worsening hygiene and odor, as well as the deteriorating condition of his anus and surrounding areas," yet took no action.  *Id.* at 24, ¶ 128.  Defendants Reedy, Suppes, Drury, O'Ryan Taylor, Tait, Bierend, Graff, Kurtenbach, Rivasplata, Flint, Axtell, Dupps, Sowa, Cooley, Hass, Wooldridge, Van Fleet, Thompson, Overturf, Meis, Shino, Aguilar, and Marshak either performed or observed checks or adjustments of plaintiff's restraints and "thus were aware of the worsening condition of [plaintiff's] raw, bruised ankles and wrists."  *Id.* at 25, ¶ 135.  During the first several days of his confinement in the dry cell, plaintiff told Reedy and Hass that his cell was too cold, yet they took no action.  *Id.* at 26, ¶ 141.

Plaintiff's allegations against particular Dry Cell Watch Defendants are sufficient to state a claim against those defendants, but the individualized allegations cannot bolster plaintiff's general allegations about other Dry Cell Watch Defendants. However, the Court finds those general allegations sufficient to plausibly state a claim about the other Dry Cell Watch Defendants.  Assuming the truth of his allegations, plaintiff has sufficiently connected the allegations of allegedly unconstitutional conditions of confinement and excessive force to the Dry Cell Watch Defendants.  As with the Supervisory Defendants, this satisfies the requirement that plaintiff allege each of these defendants' personal involvement in the alleged constitutional violation.  *See Gallagher*,

587 F.3d at 1069; *Mauchlin*, 2014 WL 5069547, at *7.

The CDOC Defendants argue that plaintiff's claims fail because plaintiff has not alleged how any of the Dry Cell Watch Defendants had the ability to change any of the conditions of plaintiff's confinement, "save for providing him small amenities (like a blanket) during his stay," and could not have released him.  Docket No. 28 at 10.  This argument is unconvincing.  As with the Supervisory Defendants, by equating the factual impossibility of their being able to change the conditions of plaintiff's confinement with plaintiff's failure to state a claim, the CDOC Defendants misapply the plausibility pleading standard, which does not require that the allegations themselves be plausible, but only that the relief plausibly flow from the allegations, which the Court assumes to be true.  *See RE/MAX, LLC*, 295 F. Supp. 3d at 1168; *see also Vondrak*, 535 F.3d at 1210.  Moreover, assuming the conditions of plaintiff's confinement were unconstitutional and that the manner of restraint constituted excessive force, sufficient "small amenities" – like blankets, a clean jumpsuit, loosened restraints or temporarily removed restraints while plaintiff went to the bathroom, and an opportunity for plaintiff to wash properly his hands and shower – could have plausibly prevented plaintiff's alleged Eighth Amendment violations.

Plaintiff argues that he does not need to rely on a failure-to-intervene theory because he has alleged that each of the Dry Cell Watch Defendants is personally liable for their own constitutional violations.  Because the Court has found that plaintiff plausibly alleged the personal participation of the Dry Cell Watch Defendants in the allegedly unconstitutional conduct, the Court need not consider whether plaintiff also had to show that the CDOC Defendants failed to intervene or whether plaintiff had to

allege that the Dry Cell Watch Defendants could actually have altered plaintiff's conditions of confinement, or whether plaintiff had to allege that they merely had an opportunity to do so.  *See Vondrak*, 535 F.3d at 1210 (holding that the question of whether a defendant is actually capable of preventing the harm is a factual question for the jury).  Accordingly, the Court will deny the CDOC Defendants' motion to dismiss plaintiff's claims against the Dry Cell Watch Defendants.

### 3.  Nurse Defendants

The Nurse Defendants who have joined the motion to dismiss are Ray, Dillinge, Annis, and Clotman.  Plaintiff alleges that the Nurse Defendants "knew that [plaintiff] was experiencing injury and pain due to the restraints and inability to adequately wash himself and change his clothing" because each Nurse Defendant saw plaintiff in the dry cell to check his restraints.  Docket No. 1 at 26, ¶ 137.  Plaintiff told the Nurse Defendants that his "rectum was bleeding and that he was in serious pain and discomfort"; however, none of the Nurse Defendants "took adequate actions."  *Id.*, ¶ 138.

The CDOC Defendants argue that plaintiff has not shown personal participation by the "undifferentiated Nurse Defendants" because he fails to show what complaints he made to which nurse on which days.  Docket No. 28 at 10–11.  The Court disagrees for the reasons discussed in regard to the Supervisory Defendants and the Dry Cell Watch Defendants.  Plaintiff has adequately alleged conduct by each of the four Nurse Defendants who have joined this motion.  *See Wilson*, 2018 WL 1304532, at *9.  The Court will therefore deny the motion to dismiss the Nurse Defendants.

#### *4.  Additional Defendants*

Plaintiff has not identified defendants Jackson, Flores, or Ruiz by any group of

defendants.  Plaintiff alleges that he "repeatedly" advised CDOC staff, including

Jackson, how cold his cell was.  Docket No. 1 at 26, ¶ 141.  Although a single allegation

that plaintiff told Jackson that his cell was too cold would be insufficient to plausibly

allege an Eighth Amendment violation because it would not plausibly establish either

the objective or subjective component, the CDOC Defendants make no arguments

about the merits of plaintiff's claims, for instance, that the conditions that plaintiff alleges

were not so bad as to be unconstitutional.  Instead, their only argument is whether

plaintiff has plausibly established their personal participation in the alleged constitutional

violations.  *See generally* Docket No. 28.  Thus, assuming that plaintiff's cell was so

cold as to constitute an unconstitutional condition of confinement, and that Jackson

knew that plaintiff's cell was that cold, plaintiff has plausibly alleged Jackson's personal

participation in the unconstitutional conditions, given that he told Jackson and Jackson

did nothing.  Plaintiff has alleged who (Jackson) is alleged to have done what (ignore or

fail to remedy the unconstitutional conditions of plaintiff's confinement) to whom

(plaintiff).  *See Robbins*, 519 F.3d at 1250; *Erickson*, 551 U.S. at 93 (at the motion to

dismiss stage, a plaintiff need only give "fair notice of what the claim is and the grounds

upon which it rests").

Plaintiff's sole allegation with respect to Flores is that Flores, among others,

observed or participated in the twice daily strip searches and thus was aware of

plaintiff's "rapidly worsening hygiene and odor, as well as the deteriorating condition of

his anus and surrounding areas" and did nothing.  Docket No. 1 at 24, ¶ 128.  That is

sufficient to allege Flores's personal participation in the allegedly unconstitutional conditions of confinement and excessive force, as it was with Jackson.  The possibility that, on summary judgment or at trial, plaintiff may be unable to establish that Flores actually saw plaintiff in this deteriorated state or that Flores did nothing to help plaintiff, is not the Court's present inquiry.  At the motion to dismiss stage, assuming that plaintiff has shown objectively unconstitutional conditions or excessive force and that Flores was aware of the conditions and did nothing, plaintiff has met his burden.  *See Robbins*, 519 F.3d at 1250; *Erickson*, 551 U.S. at 93.

Finally, plaintiff alleges that Ruiz, among others, "either performed or observed checks or adjustments of [plaintiff's] restraints, and thus were aware of the worsening condition of [plaintiff's] raw, bruised ankles and wrists."  Docket No. 1 at 25, ¶ 135. Again, assuming that the use of the restraints in the fashion plaintiff alleges constituted unconstitutional use of force or conditions of confinement, plaintiff has shown that Ruiz was aware of the state of plaintiff's ankles and wrists and failed to do anything to remedy the situation, which is sufficient to allege Ruiz's personal participation.  *See Robbins*, 519 F.3d at 1250; *Erickson*, 551 U.S. at 93.  The Court therefore will not dismiss plaintiff's claims against Jackson, Flores, or Ruiz.

### C.  Qualified Immunity

At the end of their motion, the CDOC Defendants make a passing argument that they are entitled to qualified immunity.  *See* Docket No. 28 at 11–12.  Defendants cite the elements of qualified immunity and then argue, in two sentences, that they are entitled to the doctrine's protection.  Defendants' argument is not sufficient to adequately raise the qualified immunity defense.  The Court finds *Tillmon v. Douglas*

*County*, 817 F. App'x 586, 589 (10th Cir. 2020) (unpublished), instructive.  In *Tillmon*, the Tenth Circuit considered an interlocutory appeal of the district court's decision not to rule on the defendants' qualified immunity defense.  The court explained that, "if a defendant adequately raises qualified immunity and the district court declines to rule on the defense, then we typically remand and direct the district court to decide qualified immunity.  But if a defendant does not adequately present the defense to the district court, then the defense is not preserved for appellate review and we affirm the district court."  *Id.* (citations omitted).  The court found that, although the defendants argued on appeal that they had "adequately raised qualified immunity in their motion to dismiss," their "analysis of qualified immunity in th[e] motion was cursory at best" because their "argument consisted of a single paragraph briefly discussing the law of qualified immunity."  *Id.*; *see also Riley v. Spangler*, 2021 WL 5881999, at *8 (D.N.M. Dec. 13, 2021) ("The Tenth Circuit has previously found that a defendant's argument focusing on whether a constitutional violation occurred does not raise a qualified immunity defense." (collecting cases)); *A Brighter Day, Inc. v. Barnes*, 860 F. App'x 569, 575-76 (10th Cir. 2021) (unpublished) (finding one-sentence qualified immunity argument "underdeveloped" and declining to review the merits because it "was neither pressed nor passed upon"); *Halik v. Darbyshire*, No. 20-cv-01643-PAB-KMT, 2021 WL 4305011, at *4 (D. Colo. Sept. 22, 2021) (declining to consider finding qualified immunity argument insufficiently raised); *cf. Tele-Communications, Inc. v. Comm'r*, 104 F.3d 1229, 1234 (10th Cir. 1997) (finding an argument underdeveloped when "[o]nly the final three sentences in [the relevant] paragraph ma[d]e any argument whatsoever"); *United States v. Wooten*, 377 F.3d 1134, 1145 (10th Cir. 2004) ("The court will not consider . . .

issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation.").  The CDOC Defendants therefore have not shown that they are entitled to qualified immunity.

## IV.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** the CDOC Defendants' Amended Partial Motion to Dismiss [Docket No. 28] is **DENIED**.

DATED September 26, 2022.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge